**UNITED STATES of America**

v.

**Sarkis G. SOGHANALIAN, Garabet Soghanalian, and Pan Aviation, Inc.**

**No. 87–893–CR.**

United States District Court, S.D. Florida.

Nov. 4, 1991.

Susan Tarbe, Asst. U.S. Atty., Miami, Fla., for U.S.

Neal Sonnett, Miami, Fla., for defendant Soghanalian.

Gerald Richman, Miami, Fla., for defendant Pan Aviation.

## MEMORANDUM OPINION

MORENO, District Judge.

Defendants Sarkis Soghanalian and Pan Aviation, Inc.[1] were charged with various violations of the United States Arms Export Control Act. The defendants were ultimately convicted of conspiring to export military helicopters to Iraq without applying for, or obtaining, written authorization from the Department of State. Defendants' activities were violative of 22 U.S.C. § 2778 and the Code of Federal Regulations in effect in 1983 when the offenses were committed.

The defendants were also convicted of conspiring to procure and export two rocket launchers and a rocket launcher management system to Iraq without the proper authorization from the State Department. Furthermore, the jury found Soghanalian, and his company, Pan Aviation, guilty of violating 18 U.S.C. § 1001, by providing false statements in reference to those items on the munitions control list.

In presenting their case, the defendants sought to introduce the testimony of witness Steve O'Neill concerning a statement made by Sarkis Soghanalian sometime after the rocket launchers reached Iraq. O'Neill testified, outside of the presence of the jury, that he was summoned to Soghanalian's hotel room a few hours after arriving in Baghdad. During their conversation, Soghanalian was critical of Captain Marden, the pilot of the Pan Aviation aircraft that carried the rocket launchers to Baghdad, Iraq.

O'Neill testified as follows:

"I went into Sarkis' room in Baghdad. I had been asked—I had been summoned by Sarkis. He was in an agitated state. He was angry with Capt. Marden.

He stated Marden had come to him in Baghdad and told him that there was some equipment or box left on board the Executive 727 in the belly that was supposed to have gotten off in Basel and Sarkis' words to me, 'Why does he come to me here in Baghdad and tell me when I can't do anything about it? It was his responsibility to make sure it got off in Basel.' "[2]

■ The defendants asserted that O'Neill's statement was admissible to show Soghanalian's then existing state of mind, an exclusion to the hearsay rule. F.R.E. 803(3). Federal Rule of Evidence 803(3) permits the trier of fact to consider:

---

1. The government dismissed the charges against defendant Garabet Soghanalian prior to trial.

2. The Pan Aviation jet made a stop in Basel, Switzerland, prior to arriving in Iraq.

"[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." The declarant's availability is irrelevant in the application of this rule.

Neither defendant Sarkis Soghanalian nor his son, Garabet Soghanalian, who headed Pan Aviation, testified at the trial. The record also indicates that Captain Marden testified for the Government and was cross-examined extensively by both defendants. Furthermore, O'Neill was permitted to testify before the jury as to the responsibilities of Captain Marden, the relationship between Marden and Sarkis Soghanalian, as well as Soghanalian's physical description at the time of the meeting in the Baghdad hotel.

The issue presented for determination by the Court was whether defendant Soghanalian's statement to witness O'Neill regarding prior conversations between the defendant and Captain Marden were admissible. Defendants maintained that if the statement demonstrated a then existing state of mind it would be admissible. The government countered that if the statement was one "of memory or belief to prove the fact remembered or believed" it would be inadmissible.

The Eleventh Circuit has approved the exclusion of a defendant's exculpatory statement made at the time of arrest. *United States v. Willis*, 759 F.2d 1486 (11th Cir.1985). The defendant in *Willis* sought to place his remarks before the jury without being subject to cross-examination. As here, the defendant's remarks were offered to prove his lack of knowledge of an airplane's illicit cargo. The *Willis* Court found that the hearsay rule was explicitly designed to preclude the factfinder from considering such evidence. Circuit Judge Henderson wrote:

"Again, this is precisely the issue on which the statements clearly would be offered for their truth, and therefore the issue on which the remarks are unquestionably hearsay. Fed.R.Evid. 802. The appellants do not suggest any hearsay exception, and we know of none."

*United States v. Willis*, 759 F.2d at 1501.

In the instant action, defense counsel contend that while the state of mind exception was clearly applicable to the facts of the *Willis* case, the Eleventh Circuit refrained from such a discussion as no party raised the issue.

The defense relied on *United States v. DiMaria*, 727 F.2d 265 (2nd Cir.1984), where an exculpatory statement, which was clearly admissible under Rule 803(3), was excluded thus requiring a reversal of DiMaria's conviction. A careful reading of Circuit Judge Friendly's opinion reveals that DiMaria's statement to the F.B.I. agent demonstrated his existing state of mind to possess bootleg cigarettes rather than the stolen cigarettes named in the indictment.

Soghanalian's statement to O'Neill regarding Marden's conduct and the transportation of the rocket launchers is clearly a declaration of Soghanalian's belief concerning some past act by Marden in transporting the rocket launchers. The timing of the statement is relevant since 803(3) plainly distinguishes between present state of mind as opposed to past fact remembered. Thus, the proffer that this occurred several hours after the arrival of the plane with Soghanalian, Marden and the defense articles, is important. Had the statement been made at the time the rocket launchers were discovered at the airport, perhaps the defense position of a *then* existing mental conditions would be stronger.[3]

To allow Soghanalian's statement made to a third party several hours after the event at issue would contravene the spirit

---

3. Defense counsel initially proffered that O'Neill could not testify as to the timing of his summoned meeting at the hotel with Soghanalian. Counsel indicated it could be as long as a week. After the evening recess, counsel proffered that O'Neill was able to estimate that the time gap was only a few hours.

and the letter of the evidentiary rule against hearsay. The lack of trustworthiness of a statement made by O'Neill, an employee of the defendant company, renders it inadmissible. Any probative value of such a hearsay statement is grossly outweighed by its prejudicial effect upon the government which also has the right to cross-examine witnesses. Therefore, pursuant to F.R.E. 403, this Court conducted the requisite balancing test and exercised its discretion in excluding the defendant's exculpatory, self-serving statement.

DONE and ORDERED.